SO ORDERED: June 3, 2013.



_____
James M. Carr
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| FREDRICK WILLIAM KAUFMAN, ) | Case No. 12-06883-JMC-7 |
| ) | |
| Debtor ) | |
| ) | |
| _____ ) | |
| ) | |
| THOMAS J. SAMPSELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Adv. Proc. No. 12-50293 |
| ) | |
| FREDRICK WILLIAM KAUFMAN, ) | |
| ) | |
| Defendant. ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

THIS MATTER came before the Court for a bench trial on March 27, 2013. Plaintiff, Thomas J. Sampsell, appeared in person and by counsel Christopher E. Baker and Bradley J. Buchheit. Defendant, Fredrick William Kaufman, appeared in person and by counsel William J.

Tucker. This matter was taken under advisement at the conclusion of the trial with counsel being directed to submit proposed findings of fact and conclusions of law. Below are the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.

**Findings of Fact**

1. On June 8, 2012, Kaufman filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

2. On September 21, 2012, Sampsell initiated this adversary proceeding, seeking a determination that certain debts owed by Kaufman to Sampsell are excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4).

3. At trial, the parties stipulated to and the Court admitted into evidence joint exhibits 1 through 26.

4. Sampsell and Kaufman were business partners. Each owned a 50% membership interest in an Indiana limited liability company called FHR Management LLC ("FHR"), which was organized to develop and operate a Checkers restaurant in Portage, Indiana (the "Restaurant"). The Restaurant operated from on or around July 2009 to on or around the end of March 2011. The Restaurant was never profitable.

5. FHR did not have a written operating agreement. Sampsell was a passive investor, while Kaufman oversaw the day-to-day operations of the Restaurant. Sampsell contributed significant funds for the start-up of the Restaurant (e.g., purchase of the franchise license and equipment). Prior to the execution of the Note (as defined below), Kaufman infused $36,000.00 (the "Pre-Note Infusion") into FHR. Sampsell was unaware of the Pre-Note Infusion until after the Restaurant closed.

6.  On April 16, 2010, Kaufman's son-in-law, Alexander Ladage, agreed to loan to FHR up to $225,000.00 on a "draw" basis. FHR executed and delivered to Ladage a promissory note (the "Note") to evidence FHR's repayment obligations. Each of Sampsell and Kaufman executed an unlimited personal guaranty agreement (the "Guaranty Agreement") as an inducement for Ladage to make the loan.

7.  The original purpose of the Ladage loan was to finance the purchase of equipment to be used in a second restaurant. Because that second restaurant did not come to fruition, Sampsell and Kaufman agreed that (a) the loan proceeds would be used to handle the ongoing cash flow needs of the Restaurant, and (b) draws would be made only when cash was needed to pay business obligations as they were being incurred to avoid incurring interest unnecessarily. This agreement was not memorialized in writing.

8.  Kaufman made the decisions regarding whether and when to draw on the Note. Kaufman did not advise Sampsell when draws were made.

9.  Of the $225,000.00 drawn on the Note and advanced by Ladage, $75,000.00 was deposited into a bank account in FHR's name, and $150,000.00 was directly deposited into Kaufman's personal account. Of that $150,000.00, only $100,000.00 was used for the benefit of FHR.

10.  Of that $100,000.00, $36,000.00 was retained by, or repaid by FHR at Kaufman's direction to, Kaufman in satisfaction of Kaufman's shareholder loan and Kaufman's member's equity account that comprised the FHR book entries for the Pre-Note Infusion. Kaufman did not seek Sampsell's consent to use a portion of the Note

draws for such purpose. At Trial, Kaufman and Sampsell stipulated that only the amount of $36,000.00 is at issue in this adversary proceeding.

11. Though Kaufman and Sampsell had access to FHR's banking information, only Kaufman had access to the books and records of FHR at the time he caused FHR to repay Kaufman for the Pre-Note Infusion using proceeds from the Note draws. Sampsell became aware of the repayment from his bookkeeper, after Kaufman's bookkeeper turned FHR's books and records over to Sampsell's bookkeeper in or around January 2012.

12. FHR has nothing of value to satisfy its obligations to Ladage on the Note.

13. Based upon Sampsell's guaranty, Ladage continues to pursue Sampsell for the $36,000.00 that Kaufman caused FHR to repay to Kaufman for the Pre-Note Infusion.

14. Repayment of the Pre-Note Infusion was contrary to the agreement of Sampsell and Kaufman regarding draws under the Note and use of drawn proceeds.

## Conclusions of Law

1. Any finding of fact above will also be a conclusion of law, and any conclusion of law will also be a finding of fact to support the judgment of the Court.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (I).

3. Venue of this adversary proceeding is proper in this Court and Division pursuant to 28 U.S.C. § 1409.

4. This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference issued by the United States District Court for the Southern District of Indiana on July 11, 1984.

5.     On December 18, 2012, a pretrial conference was held in this action and both parties, on the record, consented to this Court's jurisdiction to try this matter and enter a final judgment.

6.     At the close of Sampsell's case in chief, Kaufman orally moved to dismiss both counts of Sampsell's complaint. The Court granted the motion as to count I (allegations under section 523(a)(2)(A)) but denied the motion as to count II (allegations under section 523(a)(4)).

7.     Exceptions to discharge under section 523 "are to be construed strictly against a creditor and liberally in favor of the debtor." *In re Scarlata*, 979 F.2d 521, 524 (7th Cir. 1992) (citing *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985)). A creditor seeking an exception to discharge has the burden of proving all elements of the statute by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

8.     Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity…." 11 U.S.C. § 523(a)(4). To prevail on a claim under section 523(a)(4), a plaintiff must show: 1) a fiduciary relationship between the plaintiff and the debtor; and 2) the debtor's obligation to the plaintiff was the result of fraud or defalcation while acting as a fiduciary. *In re Grotrian*, 217 B.R. 1017, 1020 (Bankr.N.D.Ind.1997), *In re Berman*, 629 F.3d 761, 765-66 (7th Cir. 2011).

   *A. Kaufman breached fiduciary duties to Sampsell*

9.     "The existence of a 'fiduciary relationship' is a matter of federal law," *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000), but "[b]ankruptcy law depends on, and implements, entitlements defined by state law." *In re McGee*, 353 F.3d 537, 540 (7th Cir.

2003). The Seventh Circuit has determined that a debtor may be a fiduciary if there is "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994), *cert. denied*, 512 U.S. 1205 (1994) (citing examples of fiduciary relationships between directors and shareholders or between managing partners and limited partners); *see In re Frain*, 230 F.3d at 1017-19 (finding fiduciary relationship based on terms of contract, which put the defendant in an "ascendant position" over other shareholders).

10.     The Seventh Circuit has also made clear, though, that the existence of a fiduciary relationship is not solely dependent on a disparity in knowledge or economic status. *See In re McGee*, 353 F.3d at 541; *see also In re Tsikouris*, 340 B.R. 604, 615 (Bankr.N.D.Ind.2006) (finding that it was "not merely the differential in power or knowledge between two parties to a relationship that gives rise to a 'fiduciary' relationship").

11.     Under Indiana law, "common law fiduciary duties, similar to the ones imposed on partnerships and closely-held corporations, are applicable to Indiana [limited liability companies]." *Purcell v. Southern Hills Investments, LLC*, 847 N.E.2d 991, 997 (Ind. Ct. App. 2006). "The fiduciary must deal fairly, honestly, and openly with his corporation and fellow stockholders. He must not be distracted from the performance of his official duties by personal interests." *G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 240 (Ind. 2001) (quoting *Hartung v. Architects Hartung/Odle/Burke, Inc.*, 301 N.E.2d 240, 243 (1973)). Shareholders "may not act out of avarice, expediency or self interest in

derogation of their duty of loyalty to the other shareholders and to the corporation." *Barth v. Barth*, 659 N.E.2d 559, 561 n.6 (internal citations omitted).

12. Kaufman and Sampsell owed fiduciary duties to each other as members of FHR. Kaufman owed Sampsell the duty of fair dealing and he could not act out of self interest in derogation of his duty to Sampsell or FHR.

13. By reason of his control over the financial information and books and records of FHR and his ability to make draws and decide the usage of draw proceeds at the time he in effect "repaid himself" the $36,000.00, there existed a "difference in knowledge or power between fiduciary and principal" which gave Kaufman "a position of ascendancy" over Sampsell. The Court finds Kaufman breached his fiduciary duty by engaging in self-dealing and causing FHR to repay Kaufman (at a time when Sampsell was not being similarly repaid or provided for) without obtaining Sampsell's consent.

### *B. The debt is the product of Kaufman's defalcation*

14. For purposes of §523(a)(4), "fraud" involves intentional deceit, and defalcation has been defined as "the misappropriation of trust funds held in any fiduciary capacity, and the failure to properly account for such funds." *In re Hanson*, 432 B.R. 758, 774 (Bankr. N.D. Ill. 2010) (internal citations omitted). "Put simply, defalcation is doing something with money that you are not supposed to be doing. *Pope v. Kryszak*, 2011 U.S. Dist. LEXIS 108990 at *7.

15. The Supreme Court has determined that an act of defalcation under §523(a)(4) requires an intentional wrong. The Court has held that, "…[w]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct,

the term [defalcation] requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as equivalent." *Bullock v. Bankchampaign, N.A.*, 569 U.S. ___, 6 (2013). "Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty…That risk 'must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id*. (citing Model Penal Code §2.02(2)(c)).

16.     The Court finds that, to the extent of $36,000.00, the debt owed by Kaufman to Sampsell (by way of contribution and/or subrogation of Sampsell to the rights of Ladage) is the product of Kaufman's defalcation. Kaufman knew that Sampsell remained liable with respect to the Note obligation by virtue of his signature on the Guaranty Agreement. Kaufman also knew Ladage would look to Sampsell to satisfy the loan based upon his guaranty. Kaufman assumed Sampsell would not consent to FHR drawing funds under the Note to repay the Pre-Note Infusion. But even if the debt is not the product of Kaufman's "knowing" defalcation, he was, at the very least, reckless and completely indifferent with respect to the effect his actions would have on Sampsell vis-a-vis Sampsell's guaranty liability. Kaufman's decision to cause FHR to repay the Pre-Note Infusion without consulting Sampsell constitutes a gross deviation from the standard of conduct that a fiduciary would normally observe in such a situation.

Accordingly, the Court concludes that the $36,000.00 debt is NONDISCHARGEABLE and is excepted from discharge. The Court will enter judgment in favor of the plaintiff, Sampsell and against defendant, Kaufman.

# # #